UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK ALESI,<br><br>               Plaintiff,<br><br>    v.<br><br>CHRISTOPHER RUFE; JAMIE AYUSO; ADRIAN FRY; and DOE DEFENDANTS 1-10,<br><br>               Defendants. | Case No. 1:22-cv-00289-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## REVIEW OF COMPLAINT

As an initial matter, the Court notes that the claims at issue in the instant action are the third, fifth, and sixth causes of action in the Complaint—the claims against Defendants Rufe, Ayuso, and Fry. The claims in the Complaint that Plaintiff asserted against defendants Corizon, Centurion, Worley, and Jones have been severed into a separate case. *See* Dkt. 11; *Alesi v. Corizon*, Case No. 1:23-cv-00053-DCN (D. Idaho Jan. 31, 2023). The instant case will proceed as to Defendants Rufe, Ayuso, and Fry only.

1.      **Pleading Standards and Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id*. (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

## 2. Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution. Plaintiff alleges that he was infected with COVID-19 as a result of Defendants' decision to house Plaintiff in a unit with inmates who had already tested positive for the disease. *First Am. Compl*. ("FAC"), Dkt. 10, at 5–6, 9. Plaintiff also asserts that he was required to clean out a cell recently vacated by a COVID-positive inmate without personal protective equipment or biohazard training. *Id*. at 8–9. Finally, Plaintiff claims he was terminated from his job

as a prison janitor after he requested personal protective equipment to clean cells that had previously housed COVID-positive inmates. *Id*. at 9–10.

**3.     Discussion**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which

the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

For the reasons that follow, Plaintiff's Complaint, liberally construed, appears to state some colorable § 1983 claims based on the First and Eighth Amendments.

### A.    *Eighth Amendment Claims of Unsafe Living and Working Conditions*

In his third, fifth, and sixth causes of action, Plaintiff asserts that Defendants Rufe, Ayuso, and Fry violated the Eighth Amendment by subjecting Plaintiff to unsafe or unsanitary conditions.

The Eighth Amendment protects prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh— without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at

347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that

harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Plaintiff's allegations that he was forced to live with COVID-positive inmates and clean COVID-infected cells without protective equipment or training raise a plausible inference that Defendants Rufe, Ayuso, and Fry violated Plaintiff's Eighth Amendment rights. Plaintiff will be allowed to proceed on these claims.

### B.    *First Amendment Retaliation Claims*

In his fifth cause of action, Plaintiff asserts that Defendant Ayuso violated the First Amendment by terminating Plaintiff from his prison job in retaliation for Plaintiff's request for personal protective equipment and biohazard training.

The First Amendment to the United States Constitution includes the right to be free

from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts

embroiling themselves in every disciplinary act that occurs in state penal institutions.")
(internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal
connection between a defendant's retaliatory animus and [the plaintiff's] subsequent
injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory
motivation is not established simply by showing an adverse action by the defendant *after*
protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City
of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest
on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because
of this'"). Therefore, although the timing of an official's action can constitute
circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly
after the official learned about an inmate's exercise of protected conduct—there generally
must be something more than mere timing to support an inference of retaliatory intent.
*Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If
the adverse action would have been taken even without the inmate's exercise of protected
conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*,
547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of
an adverse action by a prison official, the inmate's retaliation claim fails so long as that
action also reasonably advanced a legitimate penological interest. The state unquestionably
has a legitimate interest in maintaining institutional order, safety, and security in its prisons,

*Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

Here, Plaintiff alleges that he complained to Defendant Ayuso that Plaintiff was not provided with protective equipment or biohazard training to clean COVID-infected cells. Plaintiff was told that if he "did not like his working conditions, he could put in his two weeks' notice of resignation." *FAC* at 9. Several days later, Plaintiff was "told not to return to work" and was "terminated from his janitorial position." *Id*. at 9–10.

These allegations give rise to a plausible inference that Defendant Ayuso terminated Plaintiff's prison employment because Plaintiff complained about working conditions and janitorial training. It is not clear at this juncture whether such verbal complaints by inmates are protected conduct, but, at this stage of litigation Plaintiff's allegations are enough for him to be permitted to proceed.

### C.    *Equal Protection Claims*

In his third, fifth, and sixth causes of action, Plaintiff alleges that he was discriminated against because of his "mental health disability" and that this discrimination violated the Fourteenth Amendment. *FAC* at 14, 17, and 18.

The Fourteenth Amendment guarantees equal protection of the law. The purpose of the Equal Protection Clause "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the

Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are generally subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).

In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment. Moreover, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78 (1987). *Turner* holds that a prison regulation or prison official's action is constitutional so long as it is reasonably related to a legitimate penological interest. *Id*. at 89; *see Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Here, Plaintiff states—without any factual support—that Defendants discriminated against him because he has a mental health disability. This is a bare legal conclusion that is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). As a result, the Complaint does not plausibly allege an equal protection violation based on any Defendant's conduct.

### D.    *Doe Defendants*

Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a

complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendants comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those Defendants.

## MOTIONS FOR INJUNCTIVE RELIEF

Plaintiff also seeks preliminary injunctive relief. *See* Dkts. 6, 12, & 13. A party may obtain injunctive relief prior to final judgment in certain limited circumstances. *See* Fed. R. Civ. P. 65. In considering whether to issue a preliminary injunction, a district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

To be entitled to preliminary injunctive relief, the moving party must establish that (1) the movant will suffer irreparable injury if the relief is denied; (2) the movant will probably prevail on the merits; (3) the balance of potential harm favors the movant; and (4) the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). "[B]ecause a preliminary injunction is an extraordinary remedy" and is "never awarded as of right," *Winter*, 555 U.S. at 24, the moving party's "right to relief must be clear and unequivocal," *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir.

1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court need not hold a hearing on a motion for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

Although Plaintiff's Complaint plausibly alleges some constitutional violations, the record is too sparse to warrant a grant of preliminary injunctive relief. At this juncture, the Court simply cannot conclude that Plaintiff is likely to prevail on the merits.

Moreover, it appears that Plaintiff's requests for a preliminary injunction are aimed at actions taken after the events described in the Complaint. A court may not grant a motion for preliminary injunctive relief that is based on a set of facts distinct from those in the Complaint. *LeBoeuf, Lamb, Greene & MacRae, LLP. v. Abraham*, 180 F. Supp. 2d 65, 69–70 (D.D.C. 2001) (motion for preliminary injunctive relief is denied where the complaint involves facts, legal issues, and parties different from those presented in the motion). Because a preliminary injunction is inappropriate where the requested injunction "deals with a matter lying wholly outside the issues" in the complaint, *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945), "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint," *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Plaintiff's requests for preliminary injunctive relief must be denied on this basis as well.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some are plausible—meaning that the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

Plaintiff will be responsible for serving a summons and the Complaint upon Defendants by formal service of process or by obtaining signed waivers of service of summons from each Defendant or their counsel. Plaintiff must do so within 90 days. If he does not, his claims against unserved Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

**ORDER**

**IT IS ORDERED:**

1.     Plaintiff may proceed on his First and Eighth Amendments claims against
       Defendants Rufe, Ayuso, and Fry as described above. All other claims
       against all other Defendants are DISMISSED. If Plaintiff later discovers facts
       sufficient to support a claim that has been dismissed, Plaintiff may move to
       amend the complaint to assert such claims.[3]

2.     Plaintiff's motions requesting preliminary injunctive relief (Dkts. 6, 12, &
       13) are DENIED without prejudice.

3.     This Order serves as formal notice that Plaintiff must complete one of the
       two following actions, as to each Defendant, within 90 days:

       a.     Formal Service of Process:

              i.      To obtain a summons from the Clerk of Court, Plaintiff must
                      file a "Request for Issuance of Summonses," which must
                      provide the names and service addresses of each Defendant to
                      the Clerk of Court. Thereafter, the Clerk of Court will prepare
                      and issue the summonses and provide them to Plaintiff.

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely
upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a
pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading
as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.");
*see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint
supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other
grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v.
Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by
entering judgment against a party named in the initial complaint, but not in the amended complaint).

ii. Plaintiff must serve a summons and a copy of the complaint upon each Defendant by formal service of process, *see* Federal Rule of Civil Procedure 4(c). Simply mailing the complaint to the defendants or their lawyers is not sufficient service of process.

iii. If Plaintiff chooses to use formal service of process, it must be accomplished pursuant to Rule 4(c), including by a person qualified according to Rule 4(c)(2).

iv. Immediately after service, the person serving the summons and complaint must file a "Return of Service" with the Clerk of Court to show the date, time, manner of service, and person upon whom the documents were served. If this document is not filed during or immediately after the 90-day service deadline, the complaint will be dismissed without prejudice.

b. <u>Waiver of Service of Summons</u>:

i. Alternatively, Plaintiff can obtain "Waiver of Service of Summons" forms by requesting them from the Clerk of Court.

ii. Plaintiff can prepare and send to each Defendant (not their attorney) a completed waiver form and a copy of the complaint, following Rule 4(d). Plaintiff must enter the date the waiver is being sent to the Defendant on each form before sending the waiver. The Defendant then has 30 days from the date entered

on the form to sign and file the waiver if they choose to waive service. Defendants are not required to waive service.

iii.   Plaintiff must send out the waivers of service exactly as specified in Rule 4(d).

iv.   If a defendant chooses to waive service, then the defendant will file the waiver of service of summons with the Clerk of Court, and the defendant is obligated to file an answer or permissible pre-answer motion, or the defendant may be subject to entry of default.

v.   If a defendant does not agree to waive service and does not file the waiver of service within the deadline, then the Plaintiff must use formal service of process (see above) to serve each Defendant according to Rule 4 within 90 days after issuance of this Order. If Plaintiff needs an extension of time to accomplish formal service of process after defendants fail to return waivers of service, then Plaintiff must file a "Motion for Extension of Time for Service under Rule 4(m)."

4.   If Plaintiff does not accomplish formal service of process or ensure that a signed waiver of service of summons for each defendant has been filed by the defendant within 90 days after issuance of this Order, all claims against any unserved Defendants will be subject to dismissal without prejudice, with or without additional notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

5.     After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

6.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

7.     Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: May 3, 2023

David C. Nye
Chief U.S. District Court Judge